UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DE'SHAY HACKNER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-618 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

De'Shay Hackner has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Hackner sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Hackner has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Hackner requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 15], GRANTS Mr. Hackner's

motion for summary judgment, [Doc. 33], and DENIES AS MOOT Mr. Hackner's request for oral argument. [Doc. 46].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Hackner's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 13], and he requests consolidated oral argument. [Doc. 46]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. <u>Vela v. Ind. Dep't of Corr.</u>, No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

De'Shay Hackner alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for approximately five months starting in August 2020. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark. He claims electrical wire dangled from the ceiling and electrocuted him. He was seldom allowed to leave his cell. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Hackner sued from prison, so the defendants aren't liable if they can show that Mr. Hackner didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1,

3

2020.[2] In broad strokes, the policy requires that a prisoner complete a formal grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

---

[2]   Mr. Hackner's confinement spanned two version of the grievance policy. Mr. Hackner claims, and the defendants don't dispute, that the policies are materially identical. [Doc. 39 at 2].

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Hackner used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Hackner didn't exhaust the grievance process. Their evidence includes a declaration from Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 15-1], the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective April 1, 2020, [Doc. 15-2], a different version of the policy, effective September 1, 2020, [Doc. 15-3], Mr. Hackner's grievance history, [Doc. 15-3], Mr. Hackner's location history, [Doc. 15-5], grievance number 117587, [Doc. 15-6], and three other grievances, [Doc. 15-7 to 15-9].

Mr. Gapski reviewed documents relating to Mr. Hackner's grievance history and attests to the grievance policy just described. He then attests to Mr. Hackner's documented grievance history.

According to Mr. Gapski, Mr. Hackner filed only one grievance that was accepted: grievance number 117587. The grievance was dated September 4, 2020, for an incident on August 29, 2020, and marked received September 15, 2020. It complained about the window and lights, among other issues. A grievance specialist responded on October 7, explaining that replacing windows was expensive, new windows were ordered, and new lights had to wait on budgeting. The response form is marked "disagree" with Mr. Hackner's signature and dated October 8, 2020. Two grievance appeals with the appeal number and Mr. Hackner's name are included, but neither is completed. Mr. Gapski says Mr. Hackner never filed an appeal.

6

Mr. Gapski reviewed two other grievances from September 9 and October 21. Both complained about cell conditions and both were rejected and returned because the issue was already addressed with grievance number 117587. Mr. Gapski reviewed another grievance dated February 4, 2021. This grievance that mentioned the lack of a light in his cell and asked for transfer to a more functional cell or the general population. The grievance was returned because the grievance specialist said it was about housing location, which is a classification issue, not subject to he grievance process.

A copy of Mr. Hackner's grievance history log is included. It shows no recorded appeal.

*Mr. Hackner's Account*

Mr. Hackner asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 31-7 at 25–35], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist at Miami Correctional Facility who also served as Rule 30(b)(6) representative for the prison, [Doc. 31-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 31-2 to 31-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 31-6].

According to Mr. Hackner's declaration, he filed a grievance about his cell conditions on September 4, 2020. The grievance was accepted and given number

7

117587. Mr. Hackner received a response on October 7 but disagreed with it, so he marked the response with "disagree" and returned it. He received a grievance appeal form, promptly completed it, and gave it to either Counselor Grove or a correctional officer. He received another copy of the appeal form but didn't complete the second blank copy because he'd already submitted his appeal. Mr. Hackner received no response to his appeal.

Mr. Hackner filed another grievance on September 9. The grievance specialists rejected it, explaining that grievance number 117587 already addressed the issue. He filed another grievance about cell conditions on September 30 but received no response. He filed yet another grievance on October 21 about cell conditions and a grievance specialist rejected it as already addressed by grievance number 117587.

Mr. Hackner eventually requested interviews with a counselor and prison administration about the non-responses. Included with the declaration are copies of Mr. Hackner's returned grievances and the original grievance's response.

Mr. Hackner presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Hackner's unit, a prisoner wishing to file a grievance would complete a grievance

8

form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described in detail how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 15-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, detailing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the

9

original grievance number on it. [Doc. 31-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 15-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 15-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.[3]

Mr. Hackner presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

---

[3] The defendants contend that Mr. Gapski's testimony about timing was only about appeals and not first-level grievances, so Mr. Gapski's testimony can't be used to generalize about how first-level appeals are handled. [Doc. 39 at 11–12].

10

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## DISCUSSION

Mr. Hackner and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Hackner didn't appeal grievance number 117587 or successfully file and appeal any other grievance about his cell's conditions, so he didn't exhaust administrative remedies.

Mr. Hackner's argument is similarly straightforward: the prison didn't respond to his appeal and didn't have a process to appeal non-responses, so administrative remedies weren't available.

Approaching from Mr. Hackner's perspective makes for a clearer picture.

Mr. Hackner argues that he exhausted *available* administrative remedies because the prison's non-response to his appeal thwarted him, and the prison's policies and practices made appealing the non-response impossible. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002). His declaration and the

11

defendants' evidence show that he filed a grievance about his cell's conditions and that grievance was answered. Mr. Hackner's declaration then supports that he appealed the grievance. He says that he marked "disagree" on the grievance response form, returned the form, received an appeal form, and timely completed and filed the appeal form by giving it to Counselor Grove or a correctional officer. He tried to file other grievances, but they were rejected as duplicative of the first grievance, and he couldn't appeal those grievances because appealing rejections isn't allowed.

This argument appears to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's policy required that prisoners appeal non-responses.

According to policy, a prisoner who's unhappy with the grievance specialist's response must appeal the response within five business days by completing State Form 45473. If there's no response within twenty business days of when the grievance specialist received the grievance, the prisoner can appeal as if there'd been a response. Once the appeal is filed, the warden must respond within ten business days of receiving the appeal. Then, once the warden responds, a prisoner can appeal to central office within five business days of the warden's response. If the warden doesn't respond within ten business days, a prisoner can appeal the warden's non-response. A prisoner appeals the warden's decision or non-response by checking "disagree" on the response and completing

12

State Form 45473. Under these rules, Mr. Hackner exhausted administrative remedies only if he appealed the warden's lack of a response to his appeal.

This appeals process makes little sense. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." But Mr. Hackner alleges that he filed an appeal and received no response. The defendants and the policy don't explain how a prisoner like Mr. Hackner, who receives no response to the first-level appeal, can mark "disagree" on a form that he doesn't have and that might not even exist. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473,[4] much less how a prisoner in restrictive housing, like Mr. Hackner was, is to get ahold of State Form 45473.

If Mr. Hackner is believed, he has exhausted *available* remedies. The grievance policy required that Mr. Hackner appeal the non-response of his appeal. That appeal was made impossible because Miami Correctional Facility required that he check "disagree" on the response that he never received and submit State Form 45473. Nothing in the written grievance policy tells a prisoner how to appeal if he never receives a response. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v.

---

[4] Mr. Hackner asserts that the only way a prisoner gets State Form 45473 is to receive one from a grievance specialist after completing the unofficial and unauthorized step. The defendants object to this assertion as not supported by Mr. Gapski's testimony — he said that State Form 45473 comes from him but didn't exactly say that there was no other way to get the form. [Doc. 31-1 at 47]. Still, the defendants never explain how a prisoner who doesn't receive a response can get State Form 45473, nor does the written policy address this crucial step.

Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Hackner "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).[5]

Warden Hyatte and Deputy Warden Payne try to undermine Mr. Hackner's evidence. First, they move to strike all hearsay statements in Mr. Hackner's statement of facts. They cite one example in Mr. Hackner's statement of material facts, [Doc. 34 at 9, ¶ 43]. There, Mr. Hackner asserts that "[a] number of the dark-cell plaintiffs [plaintiffs in the consolidated cases] asked staff on the unit what could be done about their grievances going unanswered, and they were told that they would have to wait until they received a response." [Doc. 34 at 9]. The defendants don't explain whether they're objecting to the other prisoners' statement or prison officials' statements, nor explain why either statement is inadmissible hearsay, so they waive any hearsay argument. McCormick v. Goebel, No. 3:19-CV-608, 2023 U.S. Dist. LEXIS 21903, at *14 (N.D. Ind. Feb. 7, 2023) ("Failure to articulate why a statement is hearsay is sufficient to waive the objection.") (citation omitted).

---

[5] Another gap in the policy involves timing. Mr. Hackner had to appeal the warden's non-response within five business days of when the warden was required to response, which was within ten business days of when the warden received the appeal. Timing didn't depend on when Mr. Hackner signed or sent a grievance or appeal, and he had no way of knowing when the warden received his appeal. A prisoner who doesn't receive a response is apparently left to speculate about when an appeal of a non-response is due.

Next, the defendants object to Mr. Hackner's use of the Ombudsman's deposition, arguing that it's irrelevant. They contend that nothing about the Ombudsman is relevant to whether administrative remedies were available to Mr. Hackner or whether he complied with the process. [Doc. 40 at 2]. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. As Mr. Hackner correctly points out, the Ombudsman's testimony would tend to make it more probable that Mr. Hackner's grievances were included in many that went unanswered. The objection is overruled.

These objections don't chip away at Mr. Hackner's account. He exhausted when he submitted an appeal and received no response, so he's entitled to judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne raise several arguments for why they're entitled to summary judgment on the exhaustion defense. First, they argue the administrative process wasn't onerous because other prisoners successfully finished the entire process. They cite evidence that Mr. Blanchard, a plaintiff in a consolidated case, 3:21-CV-160, completed all three steps. They say that if he could exhaust, so could Mr. Hackner.

That the prison logged and responded to another prisoner's grievances and appeals doesn't contradict Mr. Hackner's claims. Mr. Hackner claims that *his*

appeal didn't receive a response, not that no grievance ever received a response. He includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration. Plus, Mr. Blanchard received responses, so he, unlike Mr. Hackner, didn't face the impossible task of appealing a non-response when an appeal requires a form that comes only with a response.

The defendants then argue that administrative remedies were available because Mr. Hackner received information about the process during admission and orientation. This is a red herring. Mr. Hackner's argument depends on whether he was given responses and could appeal those responses in practice. His argument doesn't hinge on whether he was ever told what the policy required on paper. Even if Mr. Hackner knew the policy, the defendants' evidence doesn't overcome the impossible demand of appealing a non-response with the response that never arrived. Mr. Hackner's knowledge of the procedure doesn't show that he failed to exhaust by not appealing when he's shown that appealing non-responses was impossible in practice.

Next, the defendants cite Mr. Hackner's admission that he received two copies of the appeal form as reason to conclude that administrative remedies were available. Mr. Hackner says in his declaration that he received two copies of the appeal form after he received a first-level response to his grievance. His possession of the appeal forms at that time would show he was responsible for non-exhaustion if his entire claim were that he wasn't given appeal forms for the first-level response. But Mr. Hackner doesn't argue administrative remedies weren't available because he didn't have appeal forms available upon receiving

16

the first-level response; he argues (and has shown) that he didn't receive a response to his appeal. His earlier possession of the forms doesn't explain how he was later supposed to appeal a non-response by using the very response that never came.

Warden Hyatte and Deputy Warden Payne argue that they're entitled to summary judgment because Mr. Hackner was supposed to appeal the warden's non-response. They claim "[a]ll he had to do was appeal to the Department Offender Grievance Manager. Therefore, the entire grievance process was available to Mr. Hackner." [Doc. 40 at 4].

This argument ignores Mr. Hackner's argument. Mr. Hackner doesn't dispute that the policy said he had to appeal a non-response. He has shown why that wasn't possible and the defendants' argument doesn't attempt to fill that gap. They don't confront the policy holes Mr. Hackner has identified that frustrate a prisoner's attempt to appeal a non-response or the gaps that allow an appeal to go missing before reaching the warden. Their main claim — that their own records show no appeal — is consistent with Mr. Hackner's version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011).

In summary, the defendants' argument that the absence of evidence is conclusive evidence of absence doesn't contradict Mr. Hackner's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Hackner's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Hackner. Administrative remedies weren't available to Mr. Hackner, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Hackner's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Hackner's motion for summary judgment without a Pavey hearing.

Mr. Hackner requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Hackner's motion for summary judgment; REJECTS the

exhaustion defense; and DENIES AS MOOT Mr. Hackner's motion for consolidated oral argument.

SO ORDERED.

ENTERED: <u>  August 15, 2023  </u>

<u>     /s/ Robert L. Miller, Jr.</u>
Judge, United States District Court